[Civ. No. 3257.   Fourth Dist.   Sept. 21, 1944.]

HOWARD G. ROBERTS et al., Respondents, v. CLAUDE SALMON et al., Appellants.

Head, Wellington & Jacobs, Eugene S. Ives, Parker & Stanbury, Harry D. Parker and Richard E. Reese for Appellants.

Walter F. Keen and Forgy, Reinhaus & Forgy for Respondents.

GRIFFIN, Acting P. J.—This is an appeal by the defendants Claude Salmon and Jesse V. Tobey, from an order granting plaintiffs' motion for a new trial. The action was one for personal injuries, property damage and other expenses alleged to have resulted from a collision in March, 1942, between an automobile operated by Tobey and owned by Salmon, and an automobile operated by plaintiff Sadie M. Roberts and owned by her husband, plaintiff Howard G. Roberts, on Highway No. 101 near Seal Beach. The minor plaintiff, Eddie Roberts, was riding in the car operated by his mother. The action was tried before a jury which returned a verdict against the plaintiffs and in favor of the defendants. A special interrogatory was returned by the jury to the effect that the defendant Tobey was not an agent or servant of the defendant Claude Salmon at the time of the accident. The plaintiffs alleged that the accident was the result of negligent operation of the car by Tobey and that he was the agent and servant of Salmon and was acting in the course and scope of his employment when the accident occurred. The answer of Salmon denied that Tobey was negligent, denied that he was his servant or agent, and pleaded contributory negligence on the part of the plaintiffs. Plaintiffs' motion for new trial was granted upon the grounds of insufficiency of the evidence and errors in law occurring at the trial.

The trial court properly instructed the jury that unless the defendant Tobey was negligent and as a result of such negligence was liable, defendant Salmon could not be held liable under any theory of the case. We will therefore first discuss the evidence pertaining to Tobey's liability.

According to defendant's evidence, Tobey was driving the Salmon car from Los Angeles to Camp Callan in San Diego County, to see Tobey's son. It had been raining hard all day. Tobey testified that as he approached the scene of the accident he was traveling at a speed of 35 miles per hour, on the inside "faster" lane of a four-lane concrete highway divided by a double line in the center and a single white line on each half thereof, and outside of a residence or business district; that he was entering a rounding, sweeping left-hand bend in the road; that he first noticed the Roberts car at a distance of about 700 feet from him entering the rounding curve as it was proceeding northerly on its right-hand lane at a speed of about 20 or 30 miles per hour; that he deemed it advisable to move his car into the outside lane so that cars traveling in his same direction at a faster pace could pass in the inner lane; that when he was about 600 feet from the Roberts car he slowed his speed to 30 miles per hour but did not apply his brakes; that as he gradually started to ease his car over to the "slow" lane, he turned the wheels of his car slightly; that as the right rear wheel touched the white dividing line about half way around the curve, the car went into a skid and out of control; that he "kind of . . . cramped the wheel to the left" and the car skidded 160 to 180 feet and traversed across the center line of the highway to the point of impact which was in the east lane of the north-bound traffic and in the pathway of the Roberts car; that he did not apply his brakes after the car started to skid because he was "scared"; that while his car was skidding it seemed to be going faster all the time; that it was raining hard at the time and there was about an inch and a half of water standing all over the highway. The windshield wipers were in operation on both cars. The left side of the Tobey car collided with the front end of the Roberts car. Tobey and the passengers in the Roberts car were suffering from injuries and were removed to the hospital.

A witness, who was riding in the plaintiffs' car, testified that he was seated in the back seat; that just before the accident, Mrs. Roberts was driving on her extreme right-hand lane between 20 and 30 miles per hour; that he first noticed the Salmon car coming toward them in a southeasterly direction; that it was coming "a good deal faster than ours was going . . . about 35 miles an hour at least"; that the rear end

of the Salmon car was on the double line and the rest of it was over the center double line on the east side coming toward them; that it struck their car's left front fender; that as he observed the Salmon car approaching "it looked as though it was not skidding, but it was just coming straight at us; if he had it under control he could not have come more direct." Mrs. Roberts was knocked unconscious and had no memory of the facts preceding the accident.

This is a summary of the evidence produced and upon which the jury found for the defendants. A new trial was granted.

At the outset, defendant Tobey's counsel in his brief states that he "is not laboring under any false impressions as to the wide discretionary powers of the trial court in passing upon a motion for a new trial." He "concedes that if there is any substantial evidence in the record which was properly before the trial court at the time it passed upon the motion for new trial which will support the court's order granting the motion for a new trial upon the ground that the evidence does not justify the verdict, the appellate court must uphold the trial court's ruling." He contends, however, that the evidence on the issue of liability is without conflict and clearly insufficient to sustain a verdict for the plaintiffs; that even though the point of impact was on the east or wrong side of the highway, the evidence "affirmatively shows without equivocation that the car went into a skid through no fault or negligence on the part of" Tobey; that the uncontradicted testimony affirmatively shows he acted with ordinary care and prudence at all times before the impact and is sufficient as a matter of law to overcome any rebuttable presumption of negligence which might arise by reason of the fact that his car skidded onto the left side of the road before the impact; that the only evidence in the whole case which tended to reflect negligence on Tobey's part was the admitted fact that the impact was to his left of the center line; that this fact gives rise to only a *rebuttable* presumption of negligence and that Tobey, to escape a charge of negligence by reason of the rebuttable presumption, was only called upon to explain or account for his presence on the left side of the road; that he was not required to establish his justification by a preponderance of the evidence.

26

In this connection the trial court gave, at defendants' request, the following instruction (No. 20):

"You are instructed that the mere fact that the accident in question occurred upon Mr. Tobey's wrong side of the road is not in itself enough to establish liability upon the part of the defendant Mr. Tobey. In order for the plaintiffs to recover in this case it is necessary that they prove by a preponderance of the evidence that the defendant Mr. Tobey was negligent in some manner which was the proximate cause of the accident."

This is claimed to be an erroneous instruction. The defendant Tobey points out in his brief that the criticized portion of the instruction reciting that the "mere fact that the accident . . . occurred . . . on the wrong side of the road . . . is not in itself enough to establish liability upon" Mr. Tobey, was clear and not intended to convey the idea that it was not enough to establish a *presumption of negligence;* that in addition, plaintiff was required to show not only negligence but proximate cause.

The true rule is set forth in *Jolley* v. *Clemens,* 28 Cal. App.2d 55 [82 P.2d 51], where it was held that the presence of defendant's car on the wrong side of the highway was in itself prima facie evidence of negligence which called for an explanation on his part and threw upon him the *onus procendi,* i. e., the burden of introducing evidence to account for its presence there, and also the *onus probandi* to the extent, but to the extent only, of an explanation sufficient to balance the presumption that his conduct was negligence *per se,* but this did not require him to establish his justification by a preponderance of the evidence.

We agree with counsel for respondents that the instruction, when considered with the evidence in the case, is rather artfully worded and to the lay mind might well indicate to the jury that even though the accident occurred on the wrong side of the road it is not enough to justify a verdict for plaintiff and may well have misled the jury in so believing.

It is fundamental that a trial judge has a wide discretion in passing upon motions for new trials and there is no abuse of discretion if a trial judge is justified in feeling that the jury might have been misled by an instruction. (*Barber* v. *Quatacker,* 29 Cal.App.2d 728 [85 P.2d 560].) We

conclude that the trial court was justified, from the evidence and circumstances of this case, in believing that the presumption of negligence mentioned in *Jolley* v. *Clemens, supra,* had not been entirely rebutted as a matter of law, and that the jury, under proper instructions, might have found in favor of plaintiffs. ■ A presumption of negligence is evidence, and where the plaintiff introduces no evidence which is irreconcilable with the presumption, it remains as evidence in the case and is sufficient to constitute a conflict when considered in relation to defendant's inconsistent version of the accident. (*Temple* v. *De Mirjian,* 51 Cal.App.2d 559 [125 P.2d 544].) ■ Even though Tobey testified that his car skidded only 160 to 180 feet, his own figures show that the Roberts car was 600 feet away when he started to skid; that he was then going 30 miles per hour and that the Roberts car was going 20 to 30 miles per hour. Calculating these figures, they indicate that Tobey skidded greatly in excess of 180 feet and it might be reasonably drawn from the circumstances related that his car was traveling much in excess of 30 miles per hour under the dangerous conditions prevailing.

The basic rule is disclosed in section 510 of the Vehicle Code where it is stated that ''No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'' The testimony of plaintiffs' witness might well indicate that Tobey's car did not in fact skid into the east lane of traffic but that he was driving there at the time and that in rounding the curve did not notice the approach of the Roberts car until it was too late to avoid the accident. The judgment of the trial court in granting a new trial as to defendant Tobey, therefore, was not an abuse of discretion. (*Newman* v. *Overland Pacific Ry. Co.,* 132 Cal. 73 [64 P. 110]; *Otten* v. *Spreckels,* 24 Cal. App. 251 [141 P. 224]; *Frost* v. *Los Angeles Ry. Co.,* 165 Cal. 365 [132 P. 442].)

We will next consider the question presented by defendant Salmon. He contends that he was not liable, even though Tobey was held liable, for the reason that the evidence was insufficient to show that Tobey was his agent at the time. Assuming that the evidence may be sufficient to show liability

on the part of the defendant Tobey, Salmon, as owner of the car, would at least be subject to the limited liability of an owner under section 402 of the Vehicle Code (Stats. 1937, chap. 840, p. 2353). So we need not consider the question of agency at this time.

The trial court evidenced no abuse of discretion in granting a new trial as to the defendant Salmon.

The order granting a new trial is affirmed.

Marks, J., concurred.