[Crim. No. 1587. Fourth Dist. Apr. 27, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM R. HAGAN, Defendant and Appellant.

William R. Hagan, in pro. per., and Lawrence W. Novack, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal from a judgment of conviction after jury verdict, of the crime of escape (Pen. Code, § 4530). While it is seriously defective, we will, under the liberal construction dictated by rule 1(a) of Rules on Appeal, treat it as sufficient.

### FACTS

The essential facts are without substantial conflict. Defendant on December 24, 1960, was lawfully imprisoned and confined at the California Institute for Men at Chino, San Bernardino County, California. He was in custody on conviction of separately charged crimes of first degree robbery, second degree robbery and kidnapping. (See *People* v. *Figuieredo*, 146 Cal.App.2d 807 [304 P.2d 161].) On the date named he left the prison without lawful authority. The details of the evidence of his peregrinations thereafter, including

theft, threats, robbery, and attempts to disarm the officer by whom he was finally recaptured, need not be here recited. Such evidence was received solely on the subject of defendant's conscious knowledge and intent. While there are portions of this evidence which defendant denied, the fact of escape was freely admitted by defendant and his own story is amply sufficient to sustain the conviction.

His own testimony goes through his various court appearances on other charges, the various attorneys who represented him in his trials, his disappointments, his parole, his violation of the weapons control law and conviction thereof, his appearances before the Adult Authority, his depression at not being released, his transfer from Folsom (prison of maximum security), his assignment to work in the hospital, his departure from Chino starting with hall and hydro room, changing to civilian clothes, dropping through the floor to a tunnel and walking away. He claimed hazy memory and lack of volition, worry over aged mother, death of father, anxiety for wife and children, hitch hiking after leaving the prison, sleeping in different cars, stealing a cap pistol, stealing vodka, attempting to bluff the arresting officers by threatening them with the cap pistol.

On cross-examination, he freely admitted conviction of robbery, kidnapping and assault with a deadly weapon in San Francisco in 1948, conviction in Los Angeles of another robbery, parole in 1953, conviction of violation of the weapons control law, recommitment to prison, retrial in 1955 and reconviction after a reversal of the original robbery conviction in Los Angeles, correction of error in prison records, his use of a flashlight to make his way through the prison tunnel, climbing the 8-foot wire fence carrying extra clothing and electric razor which he procured from his locker just before leaving, his changing clothes after climbing the fence, his crawling through a hole in the second fence, his use of the flashlight to stop a passing vehicle, his thoughts about his legal wife and his common-law wife and children, the money on his person, his telephone call to his mother from Los Angeles, his travel from Pomona to Fullerton and Los Angeles, his decision when he went to the hydro room to leave the institution, his drunken condition several days later in Hawthorne, his threatening the officers with the cap pistol, attempting to take one officer's pistol and finally, throwing his cap pistol down because he knew he would be shot if he did not. He did not claim he had permission to leave.

Many other witnesses testified to different events relating to and fully confirming the fact of defendant's escape, his knowledge and understanding of his imprisonment and various phases of his activities in and after his escape showing full consciousness of his purposes. The jury was fully admonished that the evidence of defendant's activities after leaving the prison was received solely on the question of intent.

## Appointment of Counsel

Defendant's chief complaint is his contention he was denied trial counsel. He asked for counsel at trial. The public defender was appointed. Defendant made other demands for additional or other private counsel, continuances were granted to allow defendant to secure private counsel. Defendant did not do so. At trial the public defender represented defendant. We have been at pains to examine the entire record. There is some suggestion in defendant's brief that defendant wanted to secure evidence that he had lawful permission to leave Chino and that the public defender would not cooperate in this. Nothing in the record supports this. Defendant testified at length and in great detail. Not once did he suggest that he had permission to leave. All of the testimony is contrary to this suggestion. It shows diligent and careful protection of defendant's rights at every stage of the proceeding. We find no error and the contentions of defendant in this respect are without merit. The evidence was ample to sustain conviction. (*People* v. *Jones,* 163 Cal.App.2d 118 [329 P.2d 37].)

## Counsel on Appeal

Defendant took this appeal in propria persona. Thereafter he asked for counsel on appeal. The present public defender advised this court that the public defender who tried the case had stated to him that there were no points of error meriting appeal. The present public defender therefore asked to be excused from representing defendant on this appeal. We therefore appointed private counsel in the person of Lawrence W. Novack of San Bernardino. He filed with this court an extensive and thoughtful analysis of the trial and concluded that defendant had a full and fair trial without prejudicial error. Defendant then asked for additional counsel on appeal. This was not granted. Defendant asked and was granted several months additional time for briefs in propria persona. These he has filed. He now complains that his constitutional rights were violated because new counsel was not appointed. This contention is without merit. (*People* v. *Williams,* 174 Cal.

App.2d 364, 376-378 [3-4] [345 P.2d 47]; *People* v. *Tabb,* 156 Cal.App.2d 467, 471, 472 [1] [319 P.2d 656]; *People* v. *Brown,* 55 Cal.2d 64, 74 [357 P.2d 1072].)

## AUGMENTATION

Defendant, in his opening brief, demands augmentation of the record to add to the present record a transcript of the proceedings on motion to dismiss under Penal Code section 995, written motions to the court for appointment of counsel, *voir dire* examination of jurors, opening statements of counsel, arguments to jury, motion for new trial, correction of certain words in record, and letter from public defender who tried cause.

In response to defendant's original request at time of appeal, there was produced the normal full transcript of the trial proceedings including the testimony of all witnesses, objections and motions of counsel and rulings of the court and a full clerk's transcript including the court's minutes at trial at plea and at judgment, and defendant's exhibits. On February 6, 1962, this court ordered and the record was augmented by addition thereto of defendant's "Motion for Hearing under Pen. Code 995," "Affidavit of Indigency," "Motion for Appointment of Counsel," and "Motion for Appointment of Private Counsel."

In the trial court defendant moved that certain corrections of words be made. The trial court granted the motion as to some items and denied it as to others. A reading of the record as to what was done in that respect clearly shows that none of the corrections denied were material to the issue of defendant's guilt. In any event the certification of the record was for the trial court. Defendant has not attempted to show error therein. His motion for augmentation was granted as to items specified.

Defendant filed a "notice of appeal" but failed to state therein from what he appeals or even that he does appeal. However, the entire document indicates an intent to appeal from the judgment of conviction and we have so treated it (rule 1(a), Rules on Appeal). In the document he uses the term "all omitted statements." What is meant by this last cannot be ascertained. By earlier request to the trial court he has received transcripts of proceedings at plea and continuance.

After several months' continuance at defendant's request, to allow him time to file a brief in his own behalf, he now

files with his opening brief a demand for additional augmentation of the record, specifying a transcript of proceedings on motion to dismiss under Penal Code section 995, written motions for appointment of counsel, *voir dire* examination of jurors, proceeding at judgment and on motion for a new trial. He does not assert that error occurred at any of those proceedings; he does not file any supporting affidavit. He merely asserts that he is entitled to a review of all parts of every detail of what occurred from the filing of the information to denial of motion for a new trial and commitment. He cites and quotes at length from: *People* v. *Hancock,* 1 Cal.App.2d 577 [37 P.2d 120]; *Markham* v. *Hancock Oil Co.,* 2 Cal.App. 2d 392 [37 P.2d 1087]; *People* v. *Ho Kim You,* 24 Cal.App. 451 [141 P. 950]; *People* v. *Bartol,* 24 Cal.App. 659 [142 P. 510]; *People* v. *Lawlor,* 21 Cal.App. 63 [131 P. 63]; *People* v. *Tomsky,* 20 Cal.App. 672 [130 P. 184]; *People* v. *Haydon,* 18 Cal.App. 543 [123 P. 1102, 1114]; *Tupman* v. *Haberkern,* 208 Cal. 256, 269, 270 [280 P. 970]; *Hirshfeld* v. *Dana,* 193 Cal. 142 [223 P. 451]; *People* v. *Cowan,* 44 Cal. App.2d 155, 158-160 [112 P.2d 62]. These authorities all discuss cases in which error appears. They are not in point in the case at bar. Unless error is found, article VI, section 4½ has no application.

 While considerable liberality has been exercised by this and other courts in augmentation of the record where some legitimate reason therefor is shown or suggested to the appellate court, we cannot remain completely unmindful of the expense to the public of records on appeal. Of course, such a consideration is of small weight where some reasonable cause for augmentation is made. But we think a person moving for augmentation should make *some* showing, especially where the demand is not made until the original time for filing briefs has expired by many months. Here no showing whatever was made. Defendant was present. He ought to know, at least in some general way, what he thinks offended his sense of justice during the time to which he refers and he ought to tell the court to which he applies at a late date for augmentation what he expects to find and at least something of what he knows, remembers, or suspects the record requested may reveal in the way of error. Fairness cannot be considered a one-way street for the protection of defendant alone. Defendant is no novice in these matters as his briefs on appeal show. He has been through several serious trials and at least two prior appeals on other cases. We find no

"good cause" for this last augmentation demand. It is denied. (*Russi* v. *Bank of America,* 69 Cal.App.2d 100 [158 P.2d 252] ; *Courtell* v. *McEachen,* 147 Cal.App.2d 219 [305 P.2d 115] ; *People* v. *Parkinson,* 139 Cal.App.2d 500 [293 P.2d 801].)

### PRIOR CONVICTIONS

In his closing brief defendant opens new subjects not referred to in the opening brief. He contends that when he took the witness stand he was asked on examination if he had previously been convicted of a felony and deduces error therefrom. This was for impeachment purposes and was not improper. (Code Civ. Proc., § 2051; *People* v. *Richardson,* 74 Cal.App.2d 528, 538 [8] [169 P.2d 44] ; *People* v. *Renteria,* 181 Cal.App.2d 214, 218 [2] [5 Cal.Rptr. 119] ; *People* v. *Miller,* 150 Cal.App.2d 212, 213 [1] [309 P.2d 494].)

### OTHER OFFENSES

Defendant complains in his closing brief for the first time of the testimony respecting other offenses while at large after escape. Defendant had taken the position that his escape was some sort of "fixation" or "compulsion" to escape without conscious volition on his part. He does not claim unconsciousness nor lack of memory. The details of events occurring after escape and before recapture were introduced entirely to show intent, or conscious volition as well as consciousness of guilt. They were properly admitted and the jury was properly admonished as to their restricted purpose. There was no error. (*People* v. *Waller,* 14 Cal.2d 693, 701 [5] [96 P.2d 344] ; *People* v. *Hawkins,* 127 Cal. 372, 375 [59 P. 697] ; *People* v. *Hall,* 199 Cal. 451, 460 [12] [249 P. 859].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.