599 P.2d 985

Elmer D. JOHNSTON,
Plaintiff-Respondent,

v.

Darrel PASCOE, Defendant-Appellant.

No. 12009.

Supreme Court of Idaho.

Sept. 4, 1979.

Donald E. Downen of Gigray, Miller, Downen & Weston, Caldwell, for defendant-appellant.

Richard B. Eismann, Homedale, for plaintiff-respondent.

McFADDEN, Justice.

This is an appeal from a summary judgment granted in favor of Elmer D. Johnston, plaintiff-respondent, and against Darrel Pascoe, defendant-appellant, in an action brought on a previously obtained judgment against defendant-appellant. In a previous opinion, the appeal was dismissed. Thereafter, appellant's petition for rehearing was granted and the appeal was reargued. The previous opinion is withdrawn and this opinion substituted therefor. In this opinion denial of appellant's motions brought under I.R.C.P. 59(a) and 60(b) are affirmed and the appeal from the summary judgment is dismissed. While the appeal was pending Mr. Eismann was substituted as respondent's counsel; he was not counsel, or of counsel, in the trial court.

In order to appreciate the issues presented on this appeal it becomes incumbent to briefly review the chronological series of events involved in this litigation.

May 10, 1968, a judgment was entered in the case of *Johnston v. Pascoe* in favor of Johnston for $13,620.00 plus 6% interest and $2500.00 attorneys fees on a promissory note.

May 17, 1968, Johnston brought an action against Pascoe and others to set aside allegedly fraudulent conveyances, which was duly answered by the defendants. This action was dismissed on September 9, 1969 for lack of prosecution.

May 10, 1974, the present action was instituted by Johnston against Pascoe to renew the judgment of May 10, 1968. Answer was filed by Pascoe, setting forth among other defenses that the Johnston claim had been discharged in bankruptcy proceedings culminating in a discharge by Pascoe of certain obligations.

December 5, 1974, a motion for summary judgment supported by affidavits and memorandum was filed by Johnston. In the motion and affidavits, Johnston contended that Pascoe had failed to properly schedule his debt to Johnston in the bankruptcy proceedings and hence the judgment was not discharged.

February 14, 1975, Pascoe filed his memorandum in opposition to the motion for summary judgment, supported by his affidavit. This memorandum of Pascoe was

opposed by a subsequent memorandum of Johnston served February 24, 1975.

March 4, 1975, Pascoe moved the court for an extension of time within which to file additional affidavits, deposition and interrogatories, which was opposed by Johnston.

March 12, 1975, the trial court entered its memorandum decision denying the motion for extension of time and ruling that plaintiff Johnston was entitled to summary judgment. The court directed Johnston's counsel to prepare the order denying the requested extension of time and an order granting the motion for summary judgment. This memorandum decision reflects that a copy of it was submitted to counsel for each of the parties.

March 21, 1975, orders entered granting motion for summary judgment and denying motion for extension of time, both dated March 12, 1975.

March 21, 1975, summary judgment dated March 18, 1975, was entered.

April 21, 1975, Pascoe moved for new trial or in the alternative for amendment of judgment under I.R.C.P. 59(a) and also moved to vacate judgment under I.R.C.P. 60(b). These motions were supported by counsel's brief and affidavit. In his affidavit counsel acknowledged receipt of the court's memorandum decision of March 12, 1975, but stated that he was never notified of the entry of the summary judgment and order and first became aware of its entry on or about April 11, 1975, and obtained copies of the judgment and order on April 16, 1975. He stated therein that although Johnston's attorney filed a cost bill on March 18, 1975, he was not served with a copy of it.

April 21, 1975, Pascoe filed a motion for stay of proceedings until disposition of his motions under I.R.C.P. 59(a) and 60(b). The court entered its order granting a stay of proceedings on April 22, 1975.

April 29, 1975, Johnston filed objections to Pascoe's motions, supported by memorandum of authorities and affidavit.

May 12, 1975, Pascoe filed three affidavits of witnesses to establish that Johnston had personal knowledge of Pascoe's pending bankruptcy.

May 16, 1975, the court granted 10 days to Johnston to supplement his objections to motions by Pascoe, and Pascoe was given 5 days to respond, following which the court was to rule without further argument.

May 27, 1975, Johnston's supplemental memorandum was filed, and following, on July 8, 1975, Pascoe's reply memorandum.

On July 8, 1975, the trial court entered its order denying Pascoe's motion to vacate judgment under I.R.C.P. 60(b) and denying his motion for new trial or in the alternative for an amendment of the judgment under I.R.C.P. 59(a). The court also struck costs allowed Johnston in the summary judgment, and revoked the stay of proceedings previously entered.

August 11, 1975, Pascoe's notice of appeal dated August 7, 1975, was filed.

Appellant Pascoe in his initial brief asserts that the trial court erred in two regards in entering the summary judgment inasmuch as there were unresolved issues of disputed fact as to whether Johnston had received notice of the bankruptcy of the defendant, and that the trial court erred in the summary judgment in granting appellant attorneys fees. He also contends that the trial court erred in denying his motion for an extension of time to file additional affidavits, depositions and interrogatories in opposition to the motion for summary judgment; that the trial court erred in denying his I.R.C.P. 59(a) motion for new trial or in the alternative for amendment of the judgment; and finally that the trial court erred in denying his I.R.C.P. 60(b) motion to vacate the judgment.

In his petition for rehearing appellant asserts that this court should have considered his I.R.C.P. 60(b) motion and that it failed to give due weight to the opinion in the United States Supreme Court case of *Hill v. Hawes*, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), 149 A.L.R. 736. In his reply brief on rehearing, appellant strenu-

ously contends that the ruling of this court in *Sines v. Blaser*, 98 Idaho 435, 566 P.2d 758 (1977), should control.

■ Appellant's assignments of error will be discussed in the order presented. Under I.C. § 13–201,[1] an appeal from a final judgment, including a summary judgment, must be filed within 60 days of entry of the judgment. Here the summary judgment was filed in the district court on March 21, 1975, yet this appeal from that judgment was not filed until August 11, 1975, well beyond the 60 day appeal time. Appellant, however, argues that the time for appeal should be tolled because the district court clerk failed to provide immediate notice of entry of judgment as required by I.R.C.P. 77(d) as that provision existed at the time pertaining to this appeal.[2] However, even if the 60 day period of appeal were tolled until April 11, 1975, at which time appellant acknowledges he was aware of the entry of the summary judgment, more than sixty days elapsed between that date and the date of filing of this appeal. Therefore, we conclude that the appeal from the summary judgment was not timely and must be dismissed.

Appellant, nevertheless contends that under *Hill v. Hawes*, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), this appeal should still be entertained. In that case, the Supreme Court was considering an appeal taken from the District Court of the District of Columbia to the Court of Appeals. The appeal was not timely taken insofar as the original judgment of dismissal was concerned. The clerk of the district court failed to serve notice of entry of the judgment by mail and to make a note in the docket of mailing, contrary to the provisions of the Federal Rule 77(d) (which employed the same language as I.R.C.P. 77(d)

here involved). The trial court, however, signed and filed a second judgment in the same terms as that of the original judgment, and the next day the appellant filed his notice of appeal. The high court held that the appeal was timely taken, stating:

It is true that Rule 77(d) does not purport to attach any consequence to the failure of the clerk to give the prescribed notice; but we can think of no reason for requiring the notice if counsel in the cause are not entitled to rely upon the requirement that it be given. It may well be that the effect to be given to the rule is that, although the judgment is final for other purposes, it does not become final for the purpose of starting the running of the period for appeal until notice is sent in accordance with the rule. . . . But we think it was competent for the trial judge, in the view that the petitioner relied upon the provisions of Rule 77(d) with respect to notice, and in the exercise of a sound discretion, to vacate the former judgment and to enter a new judgment of which notice was sent in compliance with the rules. The term had not expired and the judgment was still within control of the trial judge for such action as was in the interest of justice to a party to the cause.

*Hill v. Hawes*, 320 U.S. at 523–24, 64 S.Ct. at 336, 88 L.Ed. at 285, 286 (1944).

A similar situation prevailed in the case of this court in *Andrus v. Irick*, 87 Idaho 471, 394 P.2d 304 (1964), where the trial court entered its judgment on November 14, 1961. No appeal was timely perfected from that judgment. However, on February 23, 1962, the appellants moved under the then current version of I.R.C.P. 60(b) to be relieved from the entry of that judg-

---

1. Idaho Code § 13–201, prior to its 1977 amendment, is the applicable notice of appeal provision.

   "1. From a final judgment . . .; within sixty days after the entry of such judgment."

2. Rule 77(d) Notice of orders or judgments.— Immediately upon the entry of an order or judgment the clerk of the district court shall serve a notice of the entry by mail in the

manner provided for in rule 5 upon every party affected thereby who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in rule 5 for the service of papers.

ment, on the grounds of mistake, inadvertence, surprise or excusable neglect on the part of themselves and their counsel. The motion was supported by affidavits. Later a subsequent motion was filed seeking to set aside the judgment, the appellants claiming they deserved relief from the judgment and that the court should reopen the judgment and take additional testimony and amend the findings of fact and conclusions of law and enter a new judgment. The trial court did enter a new judgment, which was verbatim to the original judgment, except for the date of entry of the judgment, i. e., April 19, 1962. Appellants then timely appealed from that judgment. In the case of *Andrus v. Irick, supra*, this court stated:

> [W]e are of the view that the trial court did not err in setting aside the original judgment and entering a subsequent judgment, when failure to move earlier to set it aside was occasioned by the fault or neglect of plaintiff's counsel. This conclusion is reached even though the effect of such determination by a trial court is to extend the time for appeal.

87 Idaho at 477, 394 P.2d at 307 (1964).

It is our conclusion that the instant case is at variance with the cases of *Hill v. Hawes, supra*, and *Andrus v. Irick, supra*. In the instant case it is admitted that appellant and his attorney were aware of the entry of the judgment on April 11, 1975, and at that time only 31 days had elapsed since the entry of the judgment. Thus there remained over four weeks within which an appeal from the judgment could have been perfected. It is also to be noted that unlike *Hill v. Hawes* and *Andrus v. Irick,*, here, the time for appeal had not expired when counsel sought relief from entry of the judgment, thus calling upon the trial court to exercise its discretion whether the time for appeal should in effect be extended. We therefore conclude that the appeal from the summary judgment was not timely taken and must be dismissed.

Appellant also contends that the trial court erred in denying his motion for an extension of time to file additional affidavits, depositions and interrogatories in opposition to the motion for summary judgment. This motion was filed on March 4, 1975. This motion was unsupported by any affidavit and contains the following statement: `

> [T]hat since the filing of plaintiff's Motion for Summary Judgment [filed on December 5, 1974], Defendant has information that there are witnesses who have personal knowledge that Plaintiff had actual knowledge of the filing of the petition in bankruptcy by Defendant.

Subsequent to the filing of the motion for summary judgment with its supporting affidavits and memorandum of authorities, appellant, on February 14, 1975, filed his memorandum in opposition to the motion for summary judgment with an affidavit by his attorney [3] and an affidavit by appellant. On March 12, 1975, the trial court entered a memorandum decision granting respondent's motion for summary judgment and denying appellant's motion for extension of time, which was followed on March 21, 1975 by the summary judgment and order denying appellant's motion for extension of time.

In the first place, this motion for an extension of time was addressed to the discretion of the court. There was no affidavit explaining why the information sought could not have been sooner found

---

3. At the time of the filing of the memorandum in opposition to the motion for summary judgment with its supporting affidavits, I.R.C.P. 11(c) had been amended by order of this court dated October 24, 1974, with effective date of January 1, 1975. As so amended, Rule 11(c) provided:

> Affidavits.—Affidavits authorized or permitted under these rules shall be a written statement or declaration by a party or his attor-

ney of record sworn to or affirmed before an officer authorized to take depositions by Rule 28, that the affiant believes the facts stated to be true, unless a verification upon personal knowledge is required: *provided no attorney of a party may make an affidavit in support of or in opposition to a motion for summary judgment.* . . .
(Emphasis added.)

and presented to the trial court. Under the facts and circumstances presented to the trial court from this record we can see no abuse of discretion in denying this motion. In *Lisher v. Krasselt*, 96 Idaho 854, 857, 538 P.2d 783, 786 (1975), this court stated regarding abuse of discretion by a trial court:

> We decline to ascribe a definitive meaning to the amorphous phrase "abuse of discretion" (citations omitted) solely for the purposes of this case, but it will suffice to say, that where the trial court has exercised such discretion after a careful consideration of the relevant factual circumstances and principles of law, and without arbitrary disregard for those facts and principles of justice, we will not disturb that action.[9]

[9] See *Baldwin v. Ewing*, 69 Idaho 176, 204 P.2d 430 (1949); *Richards v. Richards*, 24 Idaho 87, 132 P. 576 (1913).

■ Moreover, under the appellate statutes in effect at the time this appeal was perfected, a motion for extension of time was not one of the orders from which an appeal could be taken. I.C. § 13–201. Thus, such rulings were reviewable only when an appeal from the judgment was taken, and were reviewable only as a corollary of the appeal from the judgment or from an order granting or denying a new trial. *See State ex rel. State Board of Medicine v. Smith*, 80 Idaho 267, 328 P.2d 581 (1958); *Weiser Irrig. Dist. v. Middle Valley Irrig. Ditch Co.*, 28 Idaho 548, 155 P. 484 (1916); *Richards v. Richards*, 24 Idaho 87, 132 P. 576 (1913).

■ It is our conclusion that the dismissal of the appeal from summary judgment carried with it a dismissal of any of the non-appealable orders leading up to that judgment, including the order denying the extension of time.

■ As concerns appellant's assignment of error directed to the trial court's denial of his motion filed April 21, 1975, under I.R.C.P. 59, which motion was denominated a motion for new trial or in the

alternative for an amendment of the judgment, it is our conclusion that this was not timely served. In *Hill v. Hawes, supra*, the United States Supreme Court held that when a trial court entered a new judgment following failure of a clerk to mail notice of entry of the judgment under Fed. Rule 77(d), the time for appeal commenced to run from the time of entry of the subsequent judgment. However, it did not address the issue of the timeliness of any motion under 59(e). Appellant has shown no case and research has failed to reveal any case where the clerk's failure to provide notice under either Fed. Rule 77(d) or I.R.C.P. 77(d) *affects the time within which to file a post-judgment motion under I.R.C.P. 59 with the district court.* Therefore, even assuming that the motion's denial was timely appealed, it must be concluded that the district court properly denied the motion because more than ten days elapsed from entry of judgment and filing of appellant's motion for an amendment of the judgment under I.R.C.P. 59.[4] I.R.C.P. 59(e) specifically provides "Motion to alter or amend a judgment.—A motion to alter or amend the judgment shall be served not later than ten (10) days after entry of the judgment." In this case the record shows that the motion was filed on April 21, 1975, having been served by mail on April 18, 1975, which was some 28 days subsequent to entry of the summary judgment on March 21, 1975. I.R.C.P. 6(b) in specific terms prohibits any extension of time "for taking any action under rules 50(b), 52(b), 59(b), (d), (e), and 60(b), except to the extent and under the conditions stated in them." Insofar as the provisions of 59(b), (d) and (e) are concerned, there appear to be no conditions stated in them allowing any extension of time. We therefore hold that the trial court properly denied appellant's I.R.C.P. 59 motion because more than 10 days had elapsed from the entry of the judgment and filing of the motion.

4. Although the motion was denominated as one for "New Trial" no trial was had, the case being resolved under summary judgment proceedings. However, it could properly be considered as a motion in amendment of judgment, mentioned in I.R.C.P. 59(a).

■ A litigant may also be relieved from a final judgment for newly discovered evidence under I.R.C.P. 60(b)(2). A motion under that provision must be made within a reasonable time not exceeding 6 months, I.R.C.P. 60(b), and an appeal must be taken to this court from the district court's denial within 60 days of its denial. I.C. § 13–201. However, "[a] motion under [I.R.C.P. 60(b)] does not affect the finality of a judgment or suspend its operation. . . ." I.R.C.P. 60(b). "Because of the more extended time periods applicable to a 60(b) motion, sound policy dictate[s] that the 60(b) motion should not affect appeal time." 7 Moore's Federal Practice ¶ 60.29 (2d ed. 1978). Thus, appellant's appeal from the district court's denial of the 60(b)(2) motion is properly before this court because the motion was presented to the district court within 6 months of entry of judgment and its denial was appealed within 60 days.

The next issue is whether the merits of this portion of appellant's appeal warrants relief. In this motion appellant sought relief under 60(b)(1) "for mistake, inadvertence, surprise or excusable neglect in failing to file his motion for new trial [amendment of judgment] within ten (10) days after the entry of judgment" because of failure of plaintiff or his attorney or the clerk of the court to give notice of entry of the judgment as required by I.R.C.P. 77(d). Appellant also claims the judgment is void under 60(b)(4) because the trial court erred in finding as a matter of law that the plaintiff did not have notice of the bankruptcy proceedings and further that the court erred in finding respondent was entitled to attorney fees. He further contends, apparently under 60(b)(2), that he was denied a fair opportunity to provide witnesses or other evidence of the notice or knowledge of respondent as to appellant's bankruptcy.

■ The right to grant or deny relief under the provisions of Rule 60(b) is a discretionary one. 7 Moore's Federal Practice ¶ 60.19. *See Hearst Corp. v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979); *Pullin v. City of Kimberly*, 100 Idaho 34, 592 P.2d 849 (1979). The rule states "On motion and upon such terms as are just, the court *may* relieve a party or his legal representative from a final judgment, order, etc. . . ." (Emphasis added.) From the record before this court we can find no abuse of discretion by the trial court of such extent as to require setting aside its ruling denying appellant's 60(b) motion. In order to be entitled to relief under this 60(b)(1) motion, the movant must establish a mistake, inadvertence, surprise or excusable neglect. In examination of this record, it must be kept in mind that a 60(b) motion is not a substitute for appeal. 7 Moore's Federal Practice ¶ 60.18(8). *Schildhaus v. Moe*, 335 F.2d 529 (2d Cir. 1964). In the instant case appellant was cognizant of the entry of the judgment against him for ten days before filing this 60(b) motion, and at the time of filing of the 60(b) motion the time for appeal had not expired. It is difficult to see how appellant can assert these claims when the trial court mailed a copy of its memorandum opinion of March 12, 1975, to both counsel, in which opinion it advised the parties that it was granting the respondent's motion for summary judgment and denying appellant's request for an extension of time, and then being fully cognizant of entry of the summary judgment on April 11, 1975.

Nor do we find any abuse of discretion by the trial court in denying this motion on the ground the judgment was void (I.R.C.P. 60(b)(4)). The record before the trial court was a written one wherein respondent was granted a summary judgment. No issues were unresolved, and the matter was fully briefed. Proper procedure would have been to appeal from such a judgment, which was not timely done. From appellant's motion he would appear to be seeking to also come within the scope of 60(b)(2) of newly discovered evidence which with due diligence could not have been discovered in time to move for a new trial. However, there was no showing as to what action was taken constituting due diligence in the attempt to find the witnesses whose affidavits were taken and filed on May 12, 1975, some three weeks subsequent to filing of the 60(b) mo-

tion and some months after the motion for summary judgment was filed. It is to be recalled that appellant filed his affidavit in opposition to the motion for summary judgment on February 13, 1975, wherein he stated that he had information and belief that respondent had actual knowledge of appellant's petition for bankruptcy in 1969 (*see* I.R.C.P. 56(e) requiring affidavits in opposition to a motion for summary judgment shall be on personal knowledge). Under all the facts and circumstances, and considering the lapse of time between filing of the initial motion for summary judgment and filing of the affidavits of witnesses on May 12, 1975, we must conclude that the trial court did not abuse its discretion in denying this motion under I.R.C.P. 60(b).

We further conclude that this case is distinguishable from *Sines v. Blaser*, 98 Idaho 435, 566 P.2d 758 (1977), which opinion was rendered subsequent to the initial argument in this case. In that case judgment was entered in favor of the Sines quieting title to certain real property as against the Blasers. Counsel for the Sines prepared findings of fact, conclusions of law and judgment, originals of which were mailed to the court and copies of which were mailed to counsel for Blasers on October 15, 1974. The court signed the judgment on October 18, 1974, but the clerk failed to give notice of the entry of the judgment as required by I.R.C.P. 77(d). Nonetheless, counsel for the Blasers, on December 10, 1974, unaware judgment had been entered, moved to set aside or amend the findings, moved for judgment n. o. v., and in the alternative moved for a new trial. On December 20, 1974, the trial court denied the motions. By this time the 60 days within which an appeal could be taken from the judgment had expired. Unlike the present case, where Pascoe and his counsel admitted that they were aware of the entry of the judgment within the 60 day period within which to appeal from the judgment, the Blasers and their counsel never acknowledged that they were previously aware of the entry of the judgment against them. This court held, in *Sines v. Blaser, supra,* that the trial court abused its discretion in denying the

Blasers' motion for relief under the provisions of I.R.C.P. 60(b). However, as previously discussed, we conclude that the record before this court in the instant case fails to reflect such an abuse of discretion by the trial court as was present in *Sines v. Blaser.*

The appeal from summary judgment is dismissed as not being timely filed. Appellant's I.R.C.P. 59 motion for amendment of judgment is dismissed as not being timely filed. The order of the trial court denying appellant's I.R.C.P. 60(b) motion is affirmed. Costs to respondent.

DONALDSON, C. J., and SHEPARD, J., concur.

BISTLINE, Justice, dissenting.

There is a distinction between this case and *Sines v. Blaser*, 100 Idaho 50, 592 P.2d 1367 (1979), in that Pascoe did learn of the judgment entered against him prior to the expiration of the time in which to take an appeal. The real issue, then, is whether the party Pascoe may properly be penalized because his attorney perceived, and correctly so, that he was entitled to first pursue the various remedies which the rules of civil procedure make available in the trial court.

A litigant's right to his remedies in the trial court is just as important, if in fact not more so in some instances, as his right of appeal. Some remedies simply are not available at the appellate level without having been first sought in the trial court. The philosophy of *Sines v. Blaser* clearly requires that a litigant who has been victimized by the clerk's failure to serve the notice of entry of judgment should be given that relief which saves to him *all* of the rights and remedies which he would have had had the clerk performed the duties required by the rule. Any judicial action which does not achieve that result is intolerable, falling way short of fulfilling the requirement of the very first rule of our rules of civil procedure which declares that "They shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding." Rule 1, I.R. C.P.

This Court today should be guided by a recent decision of the nation's highest tribunal, *Harris Truck Lines v. Cherry Meat Packers*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962), which Pascoe in his brief urges upon us as controlling authority by virtue of which he is entitled to our decision on the merits of his appeal.

This same case, *Harris Truck Lines*, was mentioned but held inapplicable in our recent decision in *Wheeler v. McIntyre*, 100 Idaho 286, 596 P.2d 798 (1979). In *Wheeler* the Court's opinion, authored by Justice McFadden, pointed out that the record in that case failed to show how or when the untimely trial court motions, made subsequent to the entry of judgment, were called to the trial court's attention. In the case before us, however, it is clear and beyond any dispute that Pascoe's counsel immediately brought the motions to the attention of the trial court.[1] Not only is this so, but Pascoe's counsel at the same time moved for, *and was granted* a stay of all further proceedings until the motions were briefed, argued, and disposed of.

In this case, unlike *Wheeler*, the trial court did not state that he was denying the motions for untimeliness, and the record is clear that the motions were heard and determined on the court's view of their merit or lack thereof, both parties submitting thorough briefing and afforded the opportunity for supplementing their briefs—which each did. In the order which the court prepared is the statement:

> "This judge, after studying said motions, all briefs and affidavits supplied by counsel on the subject, and the records and files in the above-entitled case, orders as follows: . . ."

Having denied Pascoe's motions, the order of the court then proceeded to set aside the stay order.

In *Harris Truck Lines* the Circuit Court of Appeals, Seventh Circuit, dismissed an appeal as untimely filed on a holding that an extension of the appeal time allowed by order of the U. S. District Court had been improperly allowed. *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 303 F.2d 609 (7th Cir. 1962). The Supreme Court reversed. That decision is significant in two aspects, one of which is that the nation's highest court, which only hears approximately 150 cases a year out of almost 5,000 which are urged for hearing, was disposed to hear and determine a case involving only the correct and fair application of rules of procedure.

To the point in this case, the Supreme Court there showed that it would be concerned with the great hardship to a party who relies upon the trial court's ruling that it has jurisdiction, while there is still time to appeal, and then suffers a reversal of that ruling. In other words, in the case before us, it is mathematically computable that Pascoe's motions which would have tolled the running of his appeal time were untimely made, but it is clear from the record that the trial court apparently did not so believe, and instead heard the motions on the merits—and at the same time stayed further proceedings until the matter was briefed and determined.

By the time the court ruled, the time had expired in which to appeal from the judgment itself, putting Pascoe in a position of great hardship—that is, unless it be held that the trial court's entertaining and disposition of untimely motions together with the entry of a stay order had the effect of extending the time in which to appeal from the judgment.

*Harris Truck Lines* was followed and applied by the Supreme Court in a case

1.  Pascoe's motions were filed on April 18, 1975, accompanied by a comprehensive brief; filed at the same time was Pascoe's motion for a stay, with a proposed order. The court signed the stay order on April 22, and it was filed on April 23rd. On April 29, Johnston's counsel filed an objection to Pascoe's motions, including the motion for stay, which had already been entered. His objection was supported by a filed brief. By counsel's stipulation and court order Johnston's counsel on May 27th filed a supplemental memorandum, followed in turn by counsel for Pascoe filing a reply memorandum. The trial court then ruled by order signed July 7, and filed on July 8, the order being captioned ORDER DENYING DEFENDANT'S MOTIONS AND ORDER REVOKING STAY OF PROCEEDINGS.

presenting a situation identical to that now before us. In *Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), Thompson filed out-of-time motions following the entry of a final and appealable order. On denial of his motions, Thompson appealed to the circuit court of appeals, only to have his appeal dismissed on the basis that his post-trial motions were untimely and did not toll the running of the time for appeal.

In the Supreme Court Thompson claimed:

"[T]hat he relied on the Government's failure to raise a claim of untimeliness when the motions were filed and on the District Court's explicit statement that the motion for a new trial was made 'in ample time'; for if any question had been raised about the timeliness of the motions at that juncture, petitioner could have, and presumably would have, filed the appeal within 60 days of the entry of the original judgment, rather than waiting, as he did, until after the trial court had disposed of the post-trial motions." 375 U.S. at 386, 84 S.Ct. at 398.

Admittedly the district court in the case under review did not make an explicit statement that the post-judgment motions were made on time, but the act of entering the stay order coupled with the fact that the motions were heard and determined on the merits was the equivalent of an explicit statement. The trial court here, no less than the trial court in *Wheeler*, was an able trial judge of many years experience, and well able to and would have expressed himself in language leaving no doubt, had he concluded that he was obliged to dismiss the motions as untimely filed. On the contrary, he did not do so, and let the stay order stand until he had resolved the pending motions. Made aware of the court clerk's failure to mail out notice of entry of judgment, it is only logical to reason that he concluded that time in which to appeal and/or file post-judgment motions was tolled until actual knowledge of entry of judgment was somehow given. Such certainly is the teaching of respectable authority, *Hill v. Hawes*, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944) where the Supreme Court said:

"It is true that Rule 77(d) does not purport to attach any consequence to the failure of the clerk to give the prescribed notice; but we can think of no reason for requiring the notice if counsel in the cause are not entitled to rely upon the requirement that it be given. It may well be that the effect to be given to the rule is that, although the judgment is final for other purposes, *it does not become final for the purpose of starting the running of the period for appeal until notice is sent in accordance with the rule.*" (Emphasis added) 320 U.S. at 523, 64 S.Ct. at 336.

Pascoe's case is enough identical to *Thompson*, that the jurisdictional issue could be decided simply by borrowing from *Thompson* this passage:

"Here, as there, petitioner did an act which, if properly done, postponed the deadline for the filing of his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline. And here, as there, the Court of Appeals concluded that the District Court had erred and dismissed the appeal." 375 U.S. at 387, 84 S.Ct. at 398–399.

*Thompson* was followed in *Vine v. Beneficial Finance Company*, 374 F.2d 627 (2d Cir. 1967), wherein the court observed that the district judge there also "did receive and keep the motion *sub judice* some two weeks before deciding it on the merits . . . ." Id. at 632. As noted in *Wheeler*, there was a stipulation in *Vine*, but, as we all know, parties cannot stipulate a court into jurisdiction which it does not have. The holding of *Vine* was that "under these circumstances" the notice of appeal could reasonably be withheld until the motion was decided. No valid reason has been advanced why the Court today should hesitate to follow these cases. We should not seek

out technicality in order to avoid hearing Pascoe's appeal.

"It has long been judicial policy in Idaho that controversies be determined and disposed of each on its own particular facts and as substantial justice may require. The exercise of judicial discretion should tend to bring about a judgment on the merits. *Perry v. Perkins*, 73 Idaho 4, 245 P.2d 405 (1952); *Dellwo v. Peterson*, 34 Idaho 697, 203 P. 472 (1921). *See* 5 Am.Jur.2d *Appeal and Error* § 906. The California District Court of Appeal, Second District, in *Brown v. Guy*, 167 Cal.App.2d 211, 334 P.2d 67, 69–70 (1959), said: 'There is, of course, a strong public policy in favor of hearing appeals on their merits and of not depriving a party of his right of appeal because of technical non-compliance where he is attempting to perfect his appeal in good faith.' *Accord, Lundy v. Lakin*, 89 Cal.App.2d 849, 202 P.2d 369 (Cal.1949)." *Bunn v. Bunn*, 99 Idaho 710, 711, 587 P.2d 1245, 1246 (1978).

Before the rehearing was granted in this cause, and before *Sines v. Blaser* and *Wheeler v. McIntyre* were announced, Justice Bakes and I were unable to agree with an earlier and now withdrawn opinion which summarily held Pascoe's appeal untimely. The admonition of Rule 1, the persuasion of *Hill v. Hawes, supra*, and the facts of this case caused us to write that a denial of Pascoe's right to appellate review of the summary judgment entered against him worked a miscarriage of justice. We then pointed out the conclusions which necessarily follow from the adoption of the original Federal Rule 77(d), which was in effect when that rule came before the Supreme Court of the United States in *Hill v. Hawes, supra*, and was later amended— which amendment this Court deliberately chose not to adopt.

The original Federal Rule 77(d), which was in effect in 1944, read as follows: "(d) NOTICE OF ORDERS OR JUDGMENTS. Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon every party affected thereby who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers."

This rule was interpreted by the Supreme Court of the United States in *Hill v. Hawes*, and the pertinent passage is hereinabove set forth.

The actual holding of the Supreme Court in *Hill* was that the district court had not abused the discretion granted to it by Rule 60 when it entered a new judgment, notice of which was sent in compliance with the rules. However, the court's opinion also interpreted Rule 77(d) as tolling the effective date of the entry of judgment until the clerk sent the required notice. Thereafter the following sentence was added to the federal rule in 1946, effective March 19, 1948:

"Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 73(a)."

The Federal Rules Advisory Committee explained the 1948 amendment as follows:

"Rule 77(d) as amended makes it clear that notification by the clerk of the entry of a judgment has nothing to do with the starting of the time for appeal; that time starts to run from the date of entry of judgment and not from the date of notice of the entry. Notification by the clerk is merely for the convenience of litigants. . . . It would, therefore, be entirely unsafe for a party to rely on absence of notice from the clerk of the entry of a judgment, or to rely on the adverse party's failure to serve notice of the entry of a judgment." 5 F.R.D. 492, quoted in 12 Wright & Miller, § 3084.

When this Court adopted the Federal Rules in 1958, it did not include the lan-

guage contained in the 1946 amendment to the Federal Rules, but adopted the pre-1946 rule. The adoption of Rule 77(d) without including the final sentence added by the 1948 amendment can only be said to stand for the approved application of the pre-1946 Rule 77(d) consistent with that of the United States Supreme Court in *Hill v. Hawes, supra.* The effect of that additional sentence added by the 1946 amendment on the overall impact of Federal Rule 77(d) had been clearly spelled out by the United States Supreme Court and the Federal Rules Advisory Committee a decade prior to the adoption of the new Idaho rules, and this Court assuredly acted advisedly in adopting I.R.C.P. 77(d) in 1958 without that sentence. It cannot but be concluded that Rule 77(d) of the Idaho Rules of Civil Procedure, prior to its amendment effective October 1, 1976, which added the final sentence which the Federal Rule added in 1946, tolls the time for running of the appeal when it is established that the clerk has failed to serve a notice of the entry of the judgment in accordance with the rules requirement.

It is absolutely within the spirit and intendment of the rules that in this case (and there are not likely to be any others in view of the present state of our Rule 77(d)) that Pascoe's time for appealing did not commence running until his timely post-judgment motions were disposed of, which motions in turn could not be held untimely until more than ten days elapsed after either receiving notice of entry of final judgment, or actual knowledge that judgment had been entered.

Moreover, as earlier pointed out, and that which the Court's opinion does not discuss, the trial court did not rule that any of Pascoe's post-judgment motions were untimely, but, on the contrary, entertained the motions and ruled on the merits. It is reasonable to conclude that the trial court acceded to the views of the Supreme Court in *Hill v. Hawes, supra,* that the ten day time period would not commence until the clerk sent out notice in compliance with Rule 77(d), or the parties received actual knowledge of the entry of the judgment.

Where Johnston has not cross-appealed in order to assign as error the entertaining and disposition of the motions by the trial court on the merits we fear that the Court goes much too far in now holding at the appellate level that the motions were untimely, bringing into play the fairness doctrine of *Harris Truck Lines* and *Thompson,* above discussed.

The unchallenged and unrefuted affidavit of Pascoe's counsel tells the tale of how judgment came to be entered without Pascoe's being informed in time to meet the ten day limit in which post-judgment motions are to be made:

> "That your affiant received a copy of the Memorandum Decision issued by the Court in the above entitled action and was awaiting notification of the entry of the summary judgment and the order denying defendant's motion for extension of time with the intention of filing on behalf of the defendant a motion for new trial or in the alternative for an amendment of the judgment under Rule 59(a) of the Idaho Rules of Civil Procedure and a motion to vacate judgment under Rule 60(b) of the Idaho Rules of Civil Procedure.

> "That your affiant was never notified of the entry of the aforesaid summary judgment and order and first became aware of the entry of said judgment and order when he was advised by the defendant that the Sheriff of Owyhee County, Idaho, had levied execution on certain property alleged to be owned by the defendant;

> "That your affiant was informed of this fact by the defendant on or about April 11, 1975; that subsequent thereto, your affiant obtained from the Clerk of the above entitled Court a copy of said Judgment and Order on the 16th day of April, 1975;

> "That although the plaintiff in the above entitled action filed his cost bill with the above entitled Court on March 18, 1975, a copy thereof was not served on the defendant or his attorney as required by

Rule 54(d)(5) of the Idaho Rules of Civil Procedure." [2]

Johnston's then counsel [3] supplied the remainder of the tale, wherein he urged upon the trial court that the fault lay elsewhere than with him:

"There is a claim that defendant was not aware of the entry of Judgment, this, however, is not through the fault of the Plaintiff. The Defendant and his *counsel* admittedly knew of the Court's Memorandum Decision and *should have anticipated the entry of Judgment and protected themselves.*" (Emphasis added)

It is the very philosophy advanced in the last sentence of the above quotation which is wholly unacceptable, if our rules of civil procedure are to be applied as they have been and should be. For 20 years now the practice of law in this state has been under the guidance and direction of the Idaho Rules of Civil Procedure.

As of the effective date of November 1, 1958, when a final judgment was entered in any of our district courts, it became the duty of the clerk thereof "to serve a notice of the entry by mail upon every party thereby affected who is not in default for failure to appear." *Hill v. Hawes, supra*, is respectable authority for holding that Pascoe's post-judgment motions were timely filed when filed within ten days of actual knowledge that judgment had been entered.

In *Commercial Credit Corporation v. United States*, 175 F.2d 905 (8th Cir. 1949), the court there made this statement which portrays the policy and philosophy which has heretofore been the trademark of this Court:

"The notice required by this rule was not given and neither plaintiff nor his counsel knew of the entry of the findings, conclusions or forfeiture judgment until after the time for appeal had expired. Claimant had a statutory right to appeal but an appeal could, of course, not be perfected until judgment had been entered. *Coun-*

*sel were, we think, warranted in assuming that the clerk would perform his duty and serve notice of entry of judgment or order in this case as provided by Rule 77(d).* In this view of the situation claimant was deprived of its statutory right of appeal without any fault or neglect on the part of itself or its counsel. *This rule had the force and effect of law.* Courts favor the right of appeal where appeal is allowed by statute." (Emphasis added) *Commercial Credit Corp. v. United States, supra*, 175 F.2d at 907

The compiler's note to Rule 77(d), I.R. C.P., for all of these many years has stated that which the bar has properly considered to be the effect of the rule:

"Contrary to the Kentucky and Minnesota rules that make notification by the clerk merely a convenience in the case of all orders and judgments, and thus make the duty of the parties mandatory to watch the record, this rule apparently conditions notice upon the action of the clerk."

To Johnston's contention that Pascoe's counsel should have anticipated the entry of judgment and protected himself, a ready answer is that this is neither Minnesota nor Kentucky, but Idaho, where hopefully fair play is the order of the day.

The adoption of the Federal Rules into the Idaho practice was not wholly without some opposition and some doubting afterthoughts—at least among some practitioners of the state. While proponents for adoption were heard to urge that the former code provisions governing civil procedure were inadequate in discovery processes, the underlying theme then promulgated was that lawsuits would be more open, and would be heard, and won or lost *on their merits*—much as code pleading, in its time, had been an improvement on the earlier common law system. Overall, after 20 years, but for a few complaints, the

---

**2.** See Note 1 for a recounting of the alacrity with which Pascoe's counsel moved upon gaining actual knowledge of the entry of default.

**3.** Mr. Eismann first appeared for Johnston during the pendency of the appeal, not having been of counsel in any of the trial court proceedings between Johnston and Pascoe.

"federal" rules have been accepted, and a majority of today's practitioners in Idaho have known nothing else. One of these rules has been Rule 77(d), which met with universal approval of the practicing bar, and with good reason. While in pre-"federal" rule days it was almost unheard of for an attorney to accomplish the entry of a judgment without sending a copy to adverse counsel either before or after entry, there always was the possibility that this could happen, and it was a bothersome worry. With the adoption of Rule 77(d), it was thereafter required of the practitioner only that he alert his office to watch for the notice of entry from the clerk's office. Rule 77(d), to the practitioner, meant that there was removed from the practice of law the unwelcome but always possible element of chance, surprise, and sometimes outright chicanery.

We mention also that additional circumstances of this case militate strongly against holding Pascoe's post-judgment motions untimely. *Unrefuted is Pascoe's statement that he was not sent a copy of the proposed judgment, and he was not sent a copy of the cost bill.* One such inadvertence might be excused; two, however, and both totally unexplained in this case, serve to create grave misgivings where the Court is bent on not giving Pascoe the same relief that was given in *Sines v. Blaser,* and that which the nation's highest tribunal said was obtainable in *Hill v. Hawes, supra.*

We add also that the practice, both before and after the adoption of the Idaho Rules of Civil Procedure, was understood to require that a copy of any communication to a court, or judge thereof, be sent to adverse counsel. Whether this was a local rule, or a general matter of ethics is not important; the point is that it was so.

Rule 5(a), I.R.C.P., provides:

"[E]very pleading subsequent to the original complaint . . ., every written notice, appearance, demand, offer of judgment, designation of record on appeal, brief and memorandum of law, *and similar paper* shall be served upon each of the parties affected thereby, . . ." (Emphasis added)

In conclusion, it is readily seen that the Court's opinion is a retreat from the recent holding in *Sines v. Blaser.* There is no valid reason for not protecting a litigant's right to his post-judgment motions where the failure of the court's clerk to perform a rule-created duty has caused the time in which to move to expire without the litigant being made aware that judgment has been entered. Indeed, neither Johnston nor the Court advance *any* reason—whether valid or not. When one considers that there is a good chance that a litigant will somehow gain actual knowledge of entry of judgment in the 60 day period of time before the appeal deadline is passed, and then considers that there are only 10 days (shortened by one or more intervening weekends) in which to gain actual knowledge in order to then make timely post-judgment motions, one cannot help but wonder if the trial bar will be appalled at the opinion the Court hands down today. It is indeed a giant step backward from the liberal judicial philosophy we recently extolled as still extant in *Bunn v. Bunn, supra.*

Moreover, it should be noted that *Sines v. Blaser,* which the Court declines to follow today, was not at all the pronouncement of any innovative doctrine, but merely a restatement of the time-tested holding of *Andrus v. Irick,* 87 Idaho 471, 394 P.2d 304 (1964) wherein a unanimous court in a well written opinion said in a case where the neglect and fault was not that of the clerk or adverse counsel but that of the movant's own attorney:

". . . we are of the view that the trial court did not err in setting aside the original judgment and entering a subsequent judgment, when failure to move earlier to set it aside was occasioned by the fault or neglect of the plaintiff's counsel. *This conclusion is reached even though the effect of such determination by a trial court is to extend the time for appeal.* Defendant's cross-appeal is not well taken." (Emphasis added) 87 Idaho at 477, 394 P.2d at 307.

Observe also the similarity that *Andrus v. Irick* bears to the statement of the Supreme Court in *Hill v. Hawes*, wherein the actual holding was identical, to-wit: to sustain the procedure of utilizing a Rule 60 motion to preserve appeal rights where the same would be otherwise cut off by the malfunction of the court's clerk. Just as this Court in *Sines v. Blaser* followed the teaching of *Andrus v. Irick*, the federal courts, under the holding of *Hill v. Hawes*, and *notwithstanding* the subsequent 1948 amendment hereinabove discussed, have utilized Rule 60(b) in order to mitigate the harsh results which otherwise flow from an unyielding application of amended F.R.C.P. 77(d). In a recent case, the District of Columbia Circuit Court of Appeals held:

> "We believe that a trial court may vacate and re-enter a judgment under Rule 60(b) to allow a timely appeal when neither party has actual notice of the entry of judgment, when the winning party is not prejudiced by the appeal, and when the losing party moves to vacate the judgment within a reasonable time after he learns of its entry."

*Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute,* 163 U.S.App. D.C. 140, 142, 500 F.2d 808, 810 (D.C.Cir. 1974). This approach has won acceptance in other circuit courts as well. *See Radack v. Norwegian America Line Agency, Inc.,* 318 F.2d 538 (2d Cir. 1963); *Braden v. University of Pittsburgh,* 552 F.2d 948 (3d Cir. 1977); *Fidelity & Deposit Co. of Maryland v. USAFORM Hail Pool, Inc.,* 523 F.2d 744 (5th Cir. 1975); *Smith v. Jackson Tool & Die, Inc.,* 426 F.2d 5 (5th Cir. 1970). If the federal courts, even in the face of the express language of F.R.C.P. 77(d), feel free to draw upon the broad equitable powers granted them under Rule 60(b) in order to prevent injustice and to enable parties to perfect their appeals, certainly this Court was correct in doing so in *Sines v. Blaser,* 98 Idaho 435, 566 P.2d 758 (1977), given Idaho's deliberate refusal to adopt the harsh federal amendment.

The Court, were it to deign to hear Pascoe's appeal on the merits, might well be hard pressed to affirm the summary judgment. Its opinion mentions Pascoe suffered a money judgment against him in an action on a promissory note, and it mentions that Johnston then brought a second action which had for its purpose to make assets allegedly Pascoe's available for satisfaction of the money judgment—in excess of $16,-000. Unmentioned is that Johnston's counsel allowed a dismissal of this second action, which was not illogical in view of Pascoe's bankruptcy proceeding initiated while the money judgment was totally unsatisfied and the fraudulent conveyance action at issue but untried. Unmentioned is that notice of the bankruptcy proceeding was sent to Johnston in care of the very attorney who had obtained the money judgment and was engaged in the second suit seeking its satisfaction.[4]

Notwithstanding such a state of facts Johnston, the owner of a $16,000 judgment, by affidavit claimed that he had not received notice and had no actual knowledge of the bankruptcy proceeding. The attorney who represented him in those suits signed an affidavit which did not deny receipt of the bankruptcy notice and did not state that such notice and the information therein contained was not conveyed to his client. It stated only that he was not Johnston's legal representative in the bankruptcy proceeding.[5]

The issue we should be deciding today is whether the trial court erred in not considering that the record before him raised at least an inference that Johnston had been made aware of Pascoe's bankruptcy proceeding. A secondary issue is whether or not it was error for the court below to cut off as it did Pascoe's attempt to present direct evidence on that issue—evidence which he was later able to obtain after being cut off—relief from which he also sought on his post-judgment motions.

BAKES, J., concurs.

---

4. See statement in note 3.

5. See statement in note 3.